## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTON GUIRGUIS, : | |
|    PLAINTIFF, : | |
| : | CIVIL ACTION |
| V. : | |
| : | CASE NO: |
| HAMPDEN TOWNSHIP; : | |
| OFFICER JOHANNES NOTZ; : | JURY TRIAL DEMANDED |
| and OFFICER BRADLEY : | |
| CORLISS : | ELECTRONICALLY FILED |
|    DEFENDANTS. : | |
| : | |
| : | |

## **COMPLAINT**

The Plaintiff, Anton Guirguis, by and through his counsel, The Law Firm of Killian & Gephart, LLP, alleges as follows:

**I.     PRELIMINARY STATEMENT**

1. This case involves unreasonable force used by Hampden Township Police Officers Johannes Notz ("Officer Notz") and Bradley Corliss ("Officer Corliss"), in response to Anton Guirguis' ("Mr. Guirguis" or "Plaintiff") medical emergency. As result of the unreasonable force used by the police officers, Mr. Guirguis received bruising to his back, face and ribs, and permanent injuries to his wrists and shoulder. As a proximate result of Defendants' actions, Mr. Guirguis suffered physical harm,

economic harm, humiliation, and emotional suffering. Plaintiff seeks redress for violation of the Fourth Amendment to the United States Constitution.

## II. JURISDICTION AND VENUE

2. This action arises under the United States Constitution, particularly under the Fourth and Fourteenth Amendments. The action asserts claims under 42 U.S.C. § 1983.

3. This Honorable Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

4. Venue is proper in the Middle District of Pennsylvania pursuant to 28 U.S.C. §1391 in that the events complained of herein occurred in Hampden Township, Cumberland County, in the Commonwealth of Pennsylvania, and the above-captioned Defendants reside or have places of business within the boundaries of the Middle District of Pennsylvania.

## III. PARTIES

5. Mr. Guirguis is an adult citizen of the United States. He was born and raised in Egypt but resides in Hampden Township, Cumberland County in the Commonwealth of Pennsylvania.

6. Defendant Hampden Township ("Defendant Township") is a municipality in the Commonwealth of Pennsylvania. Defendant Township's central business

office is located at 209 S. Sporting Hill Road, Mechanicsburg, Pennsylvania 17050. Defendant Township operates the Hampden Township Police Department.

7. At all times relevant to this Complaint, Officer Johannes Notz and Officer Bradley Corliss (together "Defendants Officers") were police officers with the Hampden Township Police Department and employees of Defendant Township.

8. At all times relevant to this Complaint, Defendants Officers were acting within the course and scope of their employment and under the color of state law.

## IV. STATEMENT OF FACTS

9. On October 27, 2021, Rachael David awoke to find her husband, Mr. Guirguis, in their bed convulsing and foaming at his mouth.

10. Ms. David woke her adult son and directed him to call 911 to request immediate help. Ms. David then started CPR on her husband until assistance arrived.

11. Before this time, Mr. Guirguis had not experienced or been diagnosed with a seizure condition.

12. At approximately 0430 hours on October 27, 2021, Defendants Officers were dispatched to the residence for a reported individual suffering from cardiac arrest. Defendants Officers arrived prior to emergency medical services.

13. Upon arrival at the scene, Defendants Officers were met by Ms. David who directed them upstairs to her distressed husband.

14. Defendants Officers did not ask anyone whether Mr. Guirguis had any known medical conditions.

15. Ms. David attempted to explain to Defendants Officers what was occurring with her husband, but Defendants Officers ignored her and removed her from the bedroom because she was "disruptive."

16. Mr. Guirguis was in the corner of the bedroom against the bed and the wall. He was convulsing and he had urinated on himself. He also displayed signs of agonal breathing. Mr. Guirguis was in a semi-conscious state and unresponsive to Defendants Officers.

17. Defendants Officers, jumping to the conclusion that Mr. Guirguis was experiencing an opioid overdose, immediately made the decision to drag Mr. Guirguis towards the end of the bed to put Mr. Guirguis in the "recovery position."

18. Mr. Guirguis continued to convulse. Defendants Officers restrained Mr. Guirguis by laying on top of him and pinning him to the ground restricting his movements.

19. Throughout the entire interaction, Mr. Guirguis did not speak, and his eyes kept opening and closing.

20. Mr. Guirguis was unarmed through the entire encounter.

21. Officer Notz administered a dose of naloxone to Mr. Guirguis.

22. After the naloxone showed no effect, Defendants Officers continued to restrain Mr. Guirguis on the ground, while Officer Notz administered a second dose of naloxone to Mr. Guirguis.

23. Emergency medical services arrived on the scene after naloxone was administered.

24. Rather than step away and turn Mr. Guirguis over to emergency medical services to provide proper care, Defendants Officers requested additional officers to the scene to assist with restraining Mr. Guirguis.

25. Mr. Guirguis remained unresponsive to Defendants Officers' commands and attempts to place him in handcuffs.  Officer Notz took his hand with a closed fist and viciously struck Mr. Guirguis multiple times on the side of the head.

26. Despite being removed from the area, Ms. David came into the room multiple times trying to talk to Mr. Guirguis and Defendants Officers.  Ms. David objected vigorously to Defendants Officers' treatment of her husband.  Ms. David informed Defendants Officers of Mr. Guirguis' recent surgeries and provided one officer with a box of the medications Mr. Guirguis was taking in an attempt to disabuse Defendants Officers of their belief that Mr. Guirguis was on heroin.

27. Once the additional police officers arrived on scene, Defendants Officers were able to place handcuffs onto Mr. Guirguis.

28. Emergency medical services personnel were permitted to treat Mr. Guirguis after he was placed in handcuffs. The medical personnel injected Mr. Guirguis with five (5) separate doses of a sedative within an approximate twenty (20) minute time frame. A paramedic stated to Ms. Davis that he thought Mr. Guirguis was experiencing the effects of a seizure.

29. The entire interaction with Defendants Officers and Mr. Guirguis lasted approximately twenty-five to thirty minutes.

30. Mr. Guirguis was transported to Holy Spirit Hospital in Camp Hill Pennsylvania, where he was admitted to the Intensive Care Unit. Mr. Guirguis was diagnosed with having had a nocturnal seizure with convulsions, a broken shoulder, and multiple contusions and lacerations. He was not released from the hospital for eight (8) days. Upon release, Mr. Guirguis was provided seizure medications.

31. Pennsylvania Act 254 of 1970 provides, in relevant part:

> It shall be the duty of all law enforcement officers in this State to make a diligent effort to determine if any person they may find in a semi-conscious or unconscious condition is an epileptic or diabetic or a person who is suffering from any other type of illness which would cause semi-consciousness or unconsciousness, before such person may be charged with a crime.

35 P.S. § 10012.[1]

---

[1] The Act of November 25, 1970, P.L. 769, No. 254 at § 2.

32. Notwithstanding the fact that Mr. Guirguis was diagnosed with a nocturnal seizure, Officer Notz filed a Police Criminal Complaint on or about November 4, 2021, charging Mr. Guirguis with, *inter alia*, aggravated assault against a public official in the performance of his duty.

33. On May 8, 2023, the eve of trial on the criminal charges, the District Attorney for Cumberland County, Pennsylvania, filed a petition with the Cumberland County Court of Common Pleas requesting that a Nolle Prosequi be filed on all charges. The Court granted the Nolle Prosequi the following day, May 9, 2023.

34. Mr. Guirguis was compelled to expend tens of thousands of dollars preparing a legal defense prior to the charges being dropped on the eve of trial.

35. At all times relevant, Defendant Township had a policy on the Use of Force.

36. The Use of Force Policy in effect at that time of the incident, as well as today, does not provide any guidance to officers on the use of force or the use of de-escalation tactics in situations where a citizen is suffering distress due to a medical emergency.

37. The Defendant Township's police department does not have a policy involving responding to medical emergencies or implementing 35 P.S. § 10012 and provides no training to officers on recognizing the signs of seizure.

38. At all times relevant, it was reasonably foreseeable that Defendants Officers would encounter citizens displaying signs of a medical emergency, such as a seizure.

39. At all times relevant, Mr. Guirguis was an employee of the United States Postal Service.  Due to his injuries, Mr. Guirguis was on medical leave without pay for 18 months.  Mr. Guirguis remains on light duty and ineligible for most overtime hours.

## COUNT I
## VIOLATION OF THE FOURTH AMENDMENT
## 42 U.S.C. § 1983
## (Plaintiff v. Officer Notz and Officer Corliss)

40. All proceeding paragraphs are incorporated as if fully set forth herein.

41. The Fourth Amendment to the United States Constitution, made applicable to the States by the Fourteenth Amendment to the same, protects individuals from unreasonable searches and seizures.

42. The use of excessive force by a law enforcement officer is considered a "seizure" within the meaning of the Fourth Amendment.  Graham v. Conner, 490 U.S. 386, 395 (1989).

43. A claim for excessive force under the Fourth Amendment requires a plaintiff to show that a seizure occurred and that it was unreasonable.  Curley v. Klem, 298 F.3d 271, 279 (3d Cir. 2002).

44. Officer Notz and Officer Corliss handcuffed, restrained, and seized Mr. Guirguis without probable cause when Mr. Guirguis posed no threat to officers.

45. Officer Notz and Officer Corliss physically struck Mr. Guirguis on the side of his head multiple times when Mr. Guirguis posed no threat to the officers, was not fleeing arrest, and committed no crime.

46. As a proximate result of Defendants Officers' actions, Mr. Guirguis suffered physical harm, economic harm, humiliation, and emotional suffering.

47. By treating a medical emergency as a criminal matter that required the use of force, Defendants Officers exhibited reckless and callous indifference to Mr. Guirguis's federally protected rights.

48. A reasonable law enforcement officer should know that excessive use of force during a serious medical emergency would constitute a violation of the Fourth Amendment.

## COUNT II
### VIOLATION OF THE FOURTH AMENDMENT FOR CONSTITUTIONALLY DEFICIENT USE OF FORCE/DE-ESCALATION POLICIES AND PRACTICES
### 42 U.S.C. § 1983
### (Plaintiff v. Defendant Township)

49. All proceeding paragraphs are incorporated as if fully set forth herein.

50. Policymakers for Defendant Township know that its police officers will confront individuals experiencing serious medical emergencies.

51. Policymakers for Defendant Township understand that its police officers will face a difficult set of choices, and that the wrong choice in such situations will frequently lead to constitutional deprivations.

52. Defendant Township has failed to enact policies regarding the use of force or use of de-escalation tactics in response to medical issues.

53. Given how often police officers engage with individuals facing medical emergencies, the Defendant Township's failure to enact policies governing the use of force and de-escalation tactics in response to medical emergencies amounts to deliberate indifference to Mr. Guirguis's federally protected rights.

54. Defendant Township's lack of policies involving use of force or use of de-escalation tactics in response to medical issues was the moving force behind the harm imposed upon Mr. Guirguis.

## COUNT III
## VIOLATION OF THE FOURTH AMENDMENT FOR CONSTITUTIONALLY DEFICIENT TRAINING PRACTICES
## 42 U.S.C. § 1983
## (Plaintiff v. Defendant Township)

55. All proceeding paragraphs are incorporated as if fully set forth herein.

56. Defendant Township has failed to adequately train its police officers on the use of force or use of de-escalation tactics in response to medical issues.

57. Defendant Township has failed to train its officers on how to recognize illnesses that would cause semi-consciousness. This failure led Defendants Officers

to unlawfully seize Mr. Guirguis and to file charges against Mr. Guirguis in violation of state law.

58. State law requires all law enforcement officers to make a "diligent effort to determine if any person they may find in a semi-conscious or unconscious condition is an epileptic or diabetic or a person who is suffering from any other type of illness which would cause semi-consciousness or unconsciousness, before such person may be charged with a crime." 35 P.S. § 10012.  This statute is a prophylactic measure intended to prevent an obvious risk of unlawful arrests and prosecutions of individuals experiencing a medical emergency.

59. Defendant Township's failure to adequately train its officers on the use of force and the use of de-escalation tactics in response to medical issues and recognizing illnesses amounts to deliberate indifference to Mr. Guirguis's federally protected rights.

60. Defendant Township's failure to train its police officers on the use of force or use of de-escalation tactics in response to medical issues and on recognizing illnesses was the moving force behind the harm imposed upon Mr. Guirguis.

## RELIEF REQUESTED

**WHEREFORE**, Plaintiff requests this Court to enter judgment in his favor and against all Defendants and requests that this Court:

    a)    Award traditional tort remedies such as compensatory damages against all Defendants;

b)  Award such punitive damages against Officer Notz and Officer Corliss;

c)  Award prevailing party attorney's fees and costs pursuant to 42 U.S.C. § 1988(b);

d)  Award pre- and post-judgment interest at the lawful rate; and

e)  Order other relief that the Court deems just and proper under either law or equity.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury with respect to the claims and relief set forth herein.

Respectfully submitted,

Dated: October 11, 2023

*/s/ Scott P. Stedjan*
Scott P. Stedjan, Esquire
Pa. I.D. # 318851
Killian & Gephart, LLP
218 Pine Street
Harrisburg, PA 17101
sstedjan@killiangephart.com
Tel: (717) 232-1851
Fax: (717) 238-0592
*Counsel for Plaintiff*